United States District Court
Southern District of Texas
**ENTERED**

October 22, 2025

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **RUBEN LANDON DANTE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-cv-3099** |
| | § | |
| **POWER HOME REMODELING** | § | |
| **GROUP LLC, DBA PHRG LLC,** | § | |
| **POWER HRG,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Defendant Power Home Remodeling Group, LLC, DBA PHRG LLC, Power HRG's ("Defendant") Motion for Summary Judgment. (ECF No. 42). Based on a review of the motion, arguments, and relevant law, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment (*id.*) be **GRANTED**. The Court **FURTHER RECOMMENDS** Defendant's Motion in Limine (ECF No. 47) be **DENIED AS MOOT**.

## I. Background[2]

This is an employment discrimination case, arising out of Plaintiff Ruben Landon Dante's ("Plaintiff") employment with Defendant. Plaintiff states he

---

[1] This case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 5).

[2] "In evaluating a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party." *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (internal quotations omitted).

interviewed with Defendant through Joseph Green ("Green") for the position of "Remodeling Consultant" with a salary listed in the range of $130,000 to $180,000 per year. (ECF No. 1-3 at 15). Plaintiff alleges Green stated Plaintiff would "start near the higher end of [$]180,000 per year." (*Id.*). However, Plaintiff claims he was placed into an entry level role. (*Id.* at 16). During his training for the role, Plaintiff states he brought up issues regarding race, sex, and gender discrimination. (*Id.*). After expressing "Department of Labor concerns," Plaintiff alleges he received a suggestion that he quit. (*Id.* at 17). Plaintiff stated he had no intention to quit. (*Id.*). Nevertheless, Plaintiff contends he was ultimately terminated for expressing his Department of Labor concerns. (*Id.*).

On April 23, 2024, Plaintiff filed his Original Petition against Defendant in the 270th Judicial District Court of Harris County, Texas, Cause No. 2024-26260. (ECF No. 1-2 at 1–22). Plaintiff filed his First Amended Original Petition ("Amended Petition") on May 1, 2024. (ECF No. 1-3 at 1–47). Plaintiff's Amended Petition asserts the following claims: (1) Fraudulent Inducement (*id.* at 26–28); (2) Violations of the Fair Labor Standards Act ("FLSA") (*id.* at 28–32, 37–40); (3) Sexual Harassment and Hostile Work Environment (*id.* at 32–34); (4) Claims for alleged "Individual Liability and "Respondeat Superior" (*id.* at 34–35); (5) Retaliation under the FLSA (*id.* at

35–36); (6) Retaliation under Title VII (*id.* at 36); (7) Race Discrimination under Section 1981 (*id.* at 32–33, 37); (8) Pain and Suffering, Inconvenience, Mental Anguish, and Loss of Enjoyment of Life (*id.* at 41–42); and (9) Recordkeeping (*id.* at 42–45). On August 20, 2024, Defendant removed the case to this Court. (*See* ECF No. 1).

Defendant seeks dismissal of all Plaintiff's claims. (*See* ECF No. 42).

## II.    Legal Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure ("Rule") 56. Rule 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A material fact is one that "might affect the outcome of the suit under the governing law." *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 406

(5th Cir. 2021).  "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."  *Bazan*, 246 F.3d at 489 (emphasis omitted).  The Court must view the evidence in a light most favorable to the nonmovant.  *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact.  *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323).  The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof.  *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading.  *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden.  *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th

4

Cir. 2003).  However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).  Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

## III.  Discussion

Defendant seeks dismissal on each of Plaintiff's claims.  (ECF No. 42 at 10).

### a.  Fraudulent Inducement (Count 1)

Defendant argues Plaintiff's fraudulent inducement claim fails as a matter of law because Plaintiff cannot offer any evidence as to his claim.  (ECF No. 42 at 16–17).

To recover on an action for fraudulent inducement, Plaintiff must prove that:

> (1) a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew the representation was false or made it recklessly without knowledge of the truth as a positive assertion, (4) the representation was

5

made with the intention that it should be acted upon by the party,
(5) the party acted in reliance upon it, and (6) the party thereby
suffered injury.

*Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 369 (Tex. App.—Houston [14th

Dist.] 2016, pet. denied); *W. Power, Inc. v. TransAmerican Power Products,*

*Inc.*, 316 F. Supp. 3d 979, 995 (S.D. Tex. 2018).  Further, "[b]ecause fraudulent

inducement arises only in the context of a contract, the existence of a contract

is an essential part of its proof."  *Anderson v. Durant*, 550 S.W.3d 605, 614

(Tex. 2018); *see Stabilis Fund II, LLC v. Compass Bank*, No. 3:18-cv-283, 2020

WL 487497, at *4 (N.D. Tex. Jan. 30, 2020).

In Plaintiff's Amended Petition, Plaintiff alleges he interviewed with

Defendant for a "Remodeling Consultant" position with a salary of "130,000

Dollars up to 180,000 Dollars."  (ECF No. 1-3 at 27).  Plaintiff claims that "Joe

Green, who is titled Vice President for Defendant assured that based on

plaintiff [sic] resume and background 180,000 [sic] was no issue to be met."

(*Id.*).  Plaintiff attached a document to his Amended Petition that simply

states, "Salary Details for a Remodeling Consultant at Power Home

Remodeling" and "$132,936/yr."  (*Id.* at 49).

In its Motion for Summary Judgment, Defendant contends Plaintiff's

fraudulent inducement claim is solely based on an "expected salary range

posted on Indeed.com by an unknown person."  (ECF No. 42 at 16).  For

support, Defendant relies on Plaintiff's deposition transcript where counsel

asked, "is this fraudulent inducement based on the alleged statement Joseph

Green made to you?" and Plaintiff responded:

> The salary -- the fraudulent inducement would have been Power
> posting on Indeed 130 to 180 as a salary with a legal definition that
> is not mutable based on what have you, then Joseph Green again
> sustaining that in person in Texas, which is a verbal agreement
> that is legally binding and overrides a written one should there be
> being [sic] something to construe that it is true, in which case it is
> both the salary listed on Indeed and that they could very easily
> alter in accordance to the 26k they allege.

(ECF No. 42-9 at 201–02).  Defendant also states that its offer letter to Plaintiff

clearly set forth his compensation.  (ECF No. 42 at 17).  For support, Defendant

relies on the relevant offer letter, which states,

> During your training in the Marketing Department, you will earn
> $500 per workweek as a base salary and you will earn commissions
> and bonuses based on production, in accordance with the
> Company's current Marketing commission and bonus schedule.
> . . .
> Once you have completed your training in Marketing, you will
> begin 5 weeks of Sales specific training.  For your 5-week Sales
> training, you will earn $500 per workweek.  In addition, upon
> successfully completing the 5-week Sales training, you will receive
> a $4,000 bonus.
> . . .
> As a new hire, you are eligible to earn double your base
> compensation for the days worked during your first 8 weeks of
> employment.

(ECF No. 42-3 at 2).  Defendant also points to the Customer Development

Representative Pay Plan, which Plaintiff signed, that states Plaintiff's

compensation "is subject to change at anytime at the sole discretion of [Defendant]." (ECF No. 42 at 19 (citing ECF No. 42-10 at 4)).

In summary, Defendant argues Plaintiff cannot offer any admissible evidence that (1) Defendant made a materially false misrepresentation; (2) at the time any alleged misrepresentation was made, Defendant knew it was false or made the statement without any knowledge of its truth; (3) Defendant intended that Plaintiff rely on any false misrepresentation; (4) Plaintiff relied on any false misrepresentation; or (5) Plaintiff sustained actual damages as a result of any false misrepresentation. (*See* ECF No. 42 at 17–19).

Because Plaintiff will have the burden of proof on his fraudulent inducement claim, Defendant has met its summary judgment obligation by pointing the court to the absence of admissible evidence to support Plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 325. As such, Plaintiff must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

As an initial matter, it is unclear what contract Plaintiff contends is at issue. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (noting that "nature a fraudulent inducement claim presupposes that a party has been induced to enter a contract. When a party has not been induced into a contract, . . . there is no detrimental reliance and therefore no fraudulent inducement

8

claim."). The Court assumes Plaintiff asserts Green made material fraudulent misrepresentations intended to induce Plaintiff to enter into an employment contract. While Plaintiff does not refer to an employment contract, Defendant's summary judgment evidence includes a "Customer Development Representative Pay Plan" that was signed by Plaintiff. (ECF No. 42-10 at 2–4).

The Court is inclined to recommend dismissal of Plaintiff's fraudulent inducement claim because his allegations do not meet Rule 9(b)'s heightened pleading standard. FED. R. CIV. P. 9(b) (requiring a party alleging fraud or mistake to "state with particularity the circumstance constituting fraud or mistake"). However, due to Plaintiff's *pro se* status, the Court will construe the "Customer Development Representative Pay Plan" as the contract at issue.

Turning to the first element, whether Defendant made a materially false misrepresentation, Plaintiff mostly argues a "recruiter" made the representation about his salary (ECF No. 43 at 12, 17–18, 20, 23) but also mentions Green within his argument (*id.* at 20–21). To the extent Plaintiff argues a "recruiter" made a materially false misrepresentation, Plaintiff has failed to provide evidence connecting this "recruiter" with Defendant. Plaintiff typically mentions a "recruiter" when referring to a posting on Indeed.com. (*See* ECF No. 42-9 at 67; ECF No. 43 at 12). However, Plaintiff acknowledges

Defendant has no exclusive control over the content on Indeed.com. (ECF No. 42-9 at 67–69). As to Plaintiff's allegations regarding Green, Plaintiff provides no evidence Green made a materially false misrepresentation other than Plaintiff's own unsupported assertion. *See Sanches v. Carrollton-Farmers Branch Ind. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment.").

Further, Plaintiff's fraudulent inducement claim is called into question by the fact that Plaintiff signed a Pay Plan agreement in which he acknowledged that his compensation schedule was subject to change at Defendant's discretion. (ECF No. 42 at 19 (citing ECF No. 42-10 at 2–6)). The "Customer Development Representative Pay Plan" also clearly states that Plaintiff's base salary was "$26,000 annually." (ECF No. 42-10 at 2). Plaintiff signed this document on April 18, 2022, at 11:24 a.m. (*Id.* at 4).

As to the last element of a fraudulent inducement claim, in considering whether Plaintiff sustained actual damages as a result of any false misrepresentation, Plaintiff states, "[w]ith [d]amages causing the refinance of his mortgage at a much higher interest rate." (ECF No. 43 at 13). It appears Plaintiff pasted an image in his Response related to this assertion. (*See id.*). However, the image is unreadable. Outside of this, Plaintiff provides no

evidence to create a fact question as to whether he sustained actual damages as a result of any false misrepresentation.

For the reasons discussed above, the Court recommends Defendant's motion for summary judgment be granted as to Plaintiff's fraudulent inducement claim.

### b. Violations of the FLSA (Counts 2 and 11)

Defendant argues Plaintiff's FLSA claims[3] fail because Plaintiff fails to plead sufficient facts supporting his claim. (ECF No. 42 at 19).

"If a summary judgment motion depends entirely on the pleadings and exhibits it functions as a Rule 12(c) motion for judgment on the pleadings." *Hu v. Haneda*, No. 13-cv-798, 2015 WL 12831484, at *5 (W.D. Tex. Jan. 16, 2015), *report and recommendation adopted*, No. 13-cv-798, 2015 WL 12831726 (W.D. Tex. Feb. 23, 2015), *aff'd*, 627 F. App'x 359 (5th Cir. 2015), *as revised* (Dec. 22, 2015) (citing *Dyal v. Union Bag-Camp Paper Corp.*, 263 F.2d 387, 391 (5th Cir. 1959)). A motion for judgment on the pleadings, like a motion for summary judgment, should be granted only if there is no issue of material fact, and if the pleadings show that the moving party is entitled to prevail as a matter of law. *See Smith v. McMullen*, 589 F. Supp. 642, 644 (S.D. Tex. 1984). Because

---

[3] Defendant refers to Plaintiff's wage theft claim (count 2) and backpay claim (count 11) together as Plaintiff's FLSA claims. (*See* ECF No. 1-3 at 28–32, 37–40).

Defendant relies on the purported defects in Plaintiff's pleadings, the Court will construe Defendant's motion for summary judgment as seeking judgment on the pleadings under Rule 12(c). *See ABN-AMRO Mortgage Group, Inc. v. Mikel*, No. 04-cv-617, 2005 WL 8155229, at *1 n.1 (W.D. Tex. Dec. 12, 2005), *report and recommendation adopted*, No. 04-cv-617, 2006 WL 8432137 (W.D. Tex. June 8, 2006).

Specifically, Defendant argues Plaintiff's Amended Petition fails to plead facts to allege he was misclassified, worked in excess of forty hours at any time, and/or was not paid overtime. (ECF No. 42 at 19). Defendant adds that Plaintiff failed to plead any specific week, pay period, or even general time period during which he worked in excess of forty hours a week. (*Id.*).

In Plaintiff's Amended Petition, he alleges he has a "private right of action for full compensation . . . of unpaid wages or unpaid overtime compensation." (ECF No. 1-3 at 28). Plaintiff does not provide any factual allegations to support his claim other than stating, "Power Home Remodeling tells [Department of Labor] no one ever worked past 6:00PM where [Plaintiff] provided evidence of management and leadership telling them to lie soon after." (*Id.* at 17). In Plaintiff's Response, he contends his FLSA claims do not fail as a matter of law and inserted three images into his document. (ECF No. 43 at 25–26). The low-resolution images allegedly show a work schedule from

June 13, 2022, a pay stub, and an "instruction to lie about hours worked from management." (*Id.*). However, the images are of poor quality and are essentially imperceptible. Nevertheless, neither Plaintiff's Amended Petition nor his Response addresses whether Plaintiff was misclassified, worked in excess of forty hours at any time, and/or was not paid overtime.

The FLSA requires overtime pay when "a workweek [is] longer than forty hours." 29 U.S.C. § 207(a)(1). If an employer violates the overtime-compensation requirement, it is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* § 216(b).

Plaintiff must prove four elements to make a *prima facie* case: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (citations omitted).

As noted by Defendant, Plaintiff has "failed to plead any specific week, pay period, or even general time period during which he worked in excess of 40

hours a week" and "plead no allegations that provide any factual context that form the basis for the claimed FLSA violation." (ECF No. 42 at 19–20). As such, Plaintiff's minimal allegations are not enough to state a claim under the FLSA. *See Hernandez v. Praxair Distrib., Inc.*, No. 4:14-cv-1915, 2015 WL 4393105, at \*1 (S.D. Tex. July 15, 2015) (collecting cases to show general allegations are not enough to state an FLSA claim); *see also Twombly*, 550 U.S. at 550 ("[A] formulaic recitation of the elements of a cause of action will not do . . . ."). For these reasons, the Court recommends Plaintiff's wage theft claim (count 2) and backpay claim (count 11) (*see* ECF No. 1-3 at 28–32, 37–40) be dismissed.

> c. Sexual Harassment and Hostile Work Environment (Counts 3 and 4)

Defendant argues Plaintiff's sexual harassment and hostile work environment claims fail because (1) Plaintiff failed to exhaust administrative remedies under Title VII regarding alleged sexual harassment or an alleged hostile environment, and (2) even if Plaintiff had exhausted administrative remedies, Plaintiff cannot establish that any alleged unwelcome harassment was based upon sex or race. (ECF No. 42 at 20–23).

As a prerequisite to judicial relief, Title VII requires a plaintiff file an EEOC complaint and receive a "right to sue" letter. *See Honea v. SGS Control Services Inc.*, 859 F. Supp. 1025, 1029 (E.D. Tex. 1994); *Lopez v. AT&T Mobility*

*Services LLC*, 767 F. Supp. 3d 406, 421 (W.D. Tex. 2025) (detailing the process a plaintiff must follow before filing a Title VII claim in federal court). This requirement assures that (1) the EEOC is able to fulfill its dual investigatory and conciliatory functions and (2) the named defendant is put on notice of the charges against it. *Honea*, 859 F. Supp. at 1029.

Because many complainants are laypersons, courts regularly construe EEOC charges liberally when determining the permissible breadth of a judicial complaint. *See Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 161–62 (5th Cir. 1971). As a result, the judicial complaint properly encompasses any discrimination "like or reasonably related" to the charge and growing out of such allegations. *Id.* at 162; *Clemmer v. Enron Corp.*, 882 F. Supp. 606, 610 (S.D. Tex. 1995) ("Civil complaints filed under Title VII may only encompass discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegation during the pendency of the case before the Commission.") (internal quotations omitted). In other words, the suit filed should be limited to "the discrimination stated in the charge itself or developed in the course of a reasonable EEOC investigation of that charge." *Nat'l Ass'n of Gov't Emps v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994) (internal quotation omitted).

15

In his charge filed with the EEOC on January 17, 2023, Plaintiff, a non-binary individual and fluid man, complained of sex discrimination and retaliation. (*See* ECF No. 42-7 at 2–3). Plaintiff also stated an individual made "very crude and sexist comments" when advising how to make sales. (*Id.* at 2). Plaintiff provided two examples of these comments, which contained graphic, sexual language. (*See id.*). Plaintiff stated he sent an email to HR to complain. (*Id.*). Plaintiff also stated he had a conversation with "Houston VP Joe Green" to discuss to the complaint and was told "you are not a girl so this shouldn't bother you." (*Id.*).

Turning first to Plaintiff's hostile work environment claim, "discrimination and harassment are 'distinct' claims." *Trevino v. SAIA Motor Freight Line, LLC*, No. 4:20-cv-825, 2021 WL 1009317, at *4 (N.D. Tex. Jan. 26, 2021), *report and recommendation adopted*, No. 4:20-cv-825, 2021 WL 977096 (N.D. Tex. Mar. 16, 2021). "For a claim of hostile work environment to reasonably be expected to grow out of an employee's charge of discrimination, the employee must allege more than just discrete actions of discrimination." *Id.* Broadly construing Plaintiff's EEOC Charge, the Court finds an investigation concerning the existence of a hostile work environment would not reasonably be expected to grow out of Plaintiff's allegations. *See Payne v. Hammond City*, No. 24-cv-1857, 2025 WL 549360, at *10 (E.D. La. Feb. 19,

2025) (dismissing a hostile work environment claim for failure to exhaust where plaintiff (1) did not mention the term hostile work environment and (2) only alleged "discrete actions of discrimination"); *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 850 (E.D. Tex. 2014), *aff'd sub nom. Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393 (5th Cir. 2016) (finding a hostile work environment claim could not be deemed to fall within the scope of the investigation that reasonably could have been expected to grow out of an EEOC charge that did not mention or allude to facts that would have put defendants on notice about the possibility of a hostile work environment claim). As such, Plaintiff failed to exhaust his administrative remedies before the EEOC, and the Court recommends summary judgment be granted as to Plaintiff's hostile work environment claim. *See Brooks*, 70 F. Supp. 3d at 850.

Conversely, while Plaintiff does not mention a claim for sexual harassment, the Court finds Plaintiff's allegations were broad enough to encompass a claim for sexual harassment. *See Honea*, 859 F. Supp. at 1030 (finding the EEOC was on notice of a sexual harassment claim because such a claim is a type of gender discrimination); *cf. Reno v. Metro. Transit Auth.*, 977 F. Supp. 812, 818 (S.D. Tex. 1997) (finding a sexual harassment claim would not have developed and been investigated during EEOC proceedings where the

facts that formed the basis of the age, race and sex discrimination charge were completely unrelated to the allegations that the plaintiff was harassed).

The Fifth Circuit defines "unwelcome sexual harassment" as "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee." *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989). When liberally construing Plaintiff's EEOC charge, the Court finds Plaintiff's allegations would be reasonably likely to put Defendant on notice that Plaintiff intended to pursue a sexual harassment claim. *See Lopez v. AT&T Mobility Services LLC*, 767 F. Supp. 3d 406, 425 (W.D. Tex. 2025) (noting an incident where a manager touched an employee's thigh without consent may plausibly support a claim for sexual harassment even though a sexual harassment claim was not alleged in the EEOC charge).

However, even if Plaintiff had exhausted administrative remedies, Defendant argues Plaintiff cannot offer evidence that any alleged unwelcome harassment was based upon sex or race. (ECF No. 42 at 22–23). In his Response, Plaintiff acknowledges Defendant's argument but fails to provide any evidence to support his claim. (*See* ECF No. 43 at 26–27). Because Plaintiff has failed to offer evidence in response to the motion for summary

judgment in order to create a fact issue as to the alleged harassment, the Court recommends summary judgment be granted as to Plaintiff's sexual harassment claim. *See Walters v. BG Foods, Inc.*, No. 1:14-cv-96, 2015 WL 1926224, at *6 (E.D. Tex. Apr. 25, 2015).

    d.  <u>Race Discrimination Claims under Section 1981 (Counts 4 and 10)</u>

Defendant argues Plaintiff fails to make a *prima facie* showing of discrimination because (1) the alleged discriminatory actions taken against him are not adverse actions as a matter of law and (2) Plaintiff cannot show that another employee similarly situated to him and outside any of his protected categories was treated more favorably under nearly identical circumstances. (ECF No. 42 at 25–29).

To establish a *prima facie* case of race discrimination, the plaintiff must demonstrate that he is: (1) a member of a protected class; (2) qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of the protected class, or that others outside of the protected group and similarly situated were treated more favorably.[4] *Okoye v. University*

---

    [4] A plaintiff's *prima facie* case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *See Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt.*, 816 F. Supp. 2d 297, 309–10 (M.D. La. 2011), *aff'd*, 498 F. App'x 448 (5th Cir. 2012). Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the *prima facie* case drops out of the picture. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The plaintiff must then

*of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). An adverse employment action in the discrimination context refers to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002), *overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Here, Plaintiff Amended Petition alleges Defendant is liable for race discrimination "based on tangible actions [d]uring training." (ECF No. 1-3 at 37). Plaintiff adds the following:

> During training, plaintiff and class suffered open and brazen race discrimination with premier territory openly given to an all straight white cis male team, . . . creating an additional layer of hostility to the work environment. They were also permitted to leave early without having tell anyone else, "Listed worst performers" or other races, false performance claims and eventual demotions. This [sic] demotions, promotion denials, and getting fired or laid off.

---

identify or offer evidence to create a fact issue "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation and alteration marks omitted). The plaintiff has the ultimate burden of showing a genuine issue of material fact on whether the defendant discriminated against him on the basis of the plaintiff's membership in the protected class. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

(*Id*.).  In his Response, Plaintiff reiterates that he disagrees with Defendant's argument.  (ECF No. 43 at 27).  Plaintiff also inserts blurry, unreadable images of what appear to be screenshots of text messages.  (*Id*. at 28).

In its Motion for Summary Judgment, Defendant cites to deposition testimony where Plaintiff explained the alleged actions that led to his claims. (ECF No. 42 at 26 (citing ECF No. 42-9 at 151–52, 232)).  In one instance, Plaintiff testified that his race discrimination claim is based on the delegation of teams and territories.  (*See* ECF No. 42-9 at 232–33).  Plaintiff also testified that straight, white men were given the "best" territories and could leave after "three appointments."  (*See id*. at 151–52).

Having reviewed Plaintiff's Amended Petition, Response to Defendant's motion, and his deposition testimony, the Court finds the alleged actions behind Plaintiff's race discrimination claim, the delegation of teams and territories, do not qualify as adverse employment actions.  *See Memon v. Deloitte Consulting*, LLP, 779 F. Supp. 2d 619, 637 (S.D. Tex. 2011) ("An employee's subjective belief that a new position is less prestigious is insufficient to show an adverse action.") (citing *Lee v. City of New Orleans*, 156 F. App'x 618, 619 (5th Cir. 2005)); *see also Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001) (holding claim that a transfer from a unit considered desirable to another unit that was less desirable would be

insufficient absent showing that new transfer was accompanied by lost compensation, duties, or benefits); *Jackson v. Lowndes Cnty. Sch. Dist.*, 126 F. Supp. 3d 772, 777 (N.D. Miss. 2015) (noting that actions that do "not affect job duties, compensation, or benefits" are not considered adverse employment actions).

Defendant appears to acknowledge that Plaintiff's employment termination was an adverse employment action. (ECF No. 42 at 27). As such, the question becomes whether Plaintiff was replaced by someone outside of his protected class, or that others outside of the protected group and similarly situated were treated more favorably. Defendant argues that "Plaintiff simply has no evidence that any other similarly situated employee received more favorable treatment." (*Id.* at 29). Plaintiff does not appear to respond to this argument. (*See* ECF No. 43 at 28–29). Nor does Plaintiff allege he was replaced by someone outside of his protected class, or that others outside of the protected group and similarly situated were treated more favorably. (*See* ECF No. 1-3 at 32–33, 37).

Without more, Plaintiff has failed to satisfy his *prima facie* burden, and the Court recommends summary judgment be granted as to Plaintiff's race discrimination claim.

e. <u>Claims for alleged "Individual Liability and "Respondeat Superior"</u>
<u>(Counts 5 and 6)</u>

Defendant argues Plaintiff's claims for "individual liability" and "respondeat superior" fail as a matter of law for a variety of reasons. (ECF No. 42 at 29). Specifically, Defendant contends (1) Plaintiff lists numerous individuals as "defendants" when there is only one Defendant in this case; (2) "individual liability" and "respondeat superior" are not independent causes of action; and (3) there is no individual liability under Title VII for retaliation, discrimination, or harassment. (*Id.*).

Plaintiff's Amended Petition states, "Count 5: retaliation, discrimination, harassment and negligence individual liability" and "Count 6: retaliation, discrimination, harassment and negligence respondeat superior." (ECF No. 1-3 at 34–35). Under "Count 5," Plaintiff lists the names of approximately six individuals. (*Id.* at 34). However, none of these individuals are named in this lawsuit.

In his Response, Plaintiff states the following:

Finally, defendant['s] objection to Respondeat Superior and individual liability is fundamentally misappropriated and miscategorized. Plaintiff is citing Texas state statutes such as Tex. Lab. Code § 21.141 that extends liability for damages to supervisors and individuals. This is perhaps morn akin to piercing a corporate veil than arbitrarily adding defendants in the way defendant counsel frames. Neither Respondeat Superior or the state statutes preclude or exempt corporate liability, and certainly not for any one specific claim or stand-alone causes of action.

23

(ECF No. 43 at 2).

The Court agrees with Defendant that, to the extent Plaintiff asserts "individual liability" and "respondeat superior" as claims, these are not viable causes of actions. *See Kiper v. Ascension Par. Sch. Bd.*, No. 14-cv-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) ("A liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts. The court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs."). Further, the individuals named by Plaintiff under "Count 5" are not parties to this suit. Finally, as noted by Defendant, "it has long been established that individuals are not liable under Title VII in either their individual or official capacities." *Murphy v. Pine Belt Fed. Credit Union*, No. 2:19-cv-143, 2019 WL 6311994, at *3 (S.D. Miss. Nov. 25, 2019) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002)). As such, the Court recommends Plaintiff's claims for "individual liability" and "respondeat superior" be dismissed. (*See* ECF No. 1-3 at 34–35).

    f.   <u>Retaliation Claims (Counts 7, 8, and 9)</u>

Defendant argues Plaintiff's retaliation claims (counts 7, 8, and 9) fail as a matter of law because Plaintiff cannot establish a *prima facie* case of retaliation. (ECF No. 42 at 30). Plaintiff responds that "[t]his matter is in dispute and subject to a [jury trial]." (ECF No. 43 at 29). Plaintiff also adds

24

that his termination was in "direct response" to raising "protected concerns," and then inserted an unreadable image into his Response. (*See id.*).

Without direct evidence of retaliation, Plaintiff's claims are subject to the *McDonnell Douglas* framework, which requires *prima facie* proof that (1) the plaintiff engaged in protected activity; (2) the employer took adverse action against the plaintiff; and (3) there is a causal connection between the two. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If Plaintiff meets his initial burden, then Defendant "must come forward with a legitimate, non-discriminatory reason for the adverse action." *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023). Once Defendant does so, Plaintiff "must then show 'sufficient evidence that the proffered reason is a pretext for retaliation.'" *Id.* (quoting *Nall v. BNSF Ry.*, 917 F.3d 335, 340 (5th Cir. 2019)).

As discussed above, Plaintiff disputes Defendant's argument and contends his termination was a result of raising certain concerns. (*See* ECF No. 43 at 29). However, Plaintiff has the burden to raise a genuine issue of material fact, and his Response fails to identify any evidence that supports each requirement of his retaliation claims. As such, the Court recommends summary judgment be granted as to Plaintiff's retaliation claims. *See Vasquez v. Nelson*, No. 4:23-cv-3620, 2025 WL 1456669, at *8 (S.D. Tex. May 12, 2025),

*report and recommendation adopted*, No. 4:23-cv-3620, 2025 WL 1458538 (S.D. Tex. May 19, 2025).

g. Pain and Suffering, Inconvenience, Mental Anguish, and Loss of Enjoyment of Life (Count 12)

Defendant argues Plaintiff's "private right of action" for mental anguish damages should be dismissed because there is no such recognized cause of action. (ECF No. 42 at 31). Plaintiff responds that this "[s]ubject is in dispute." (ECF No. 43 at 30).

Mental anguish damages are "not an independent cause of action in and of itself—rather, '[m]ental anguish damages are recoverable when certain other legal duties are breached.'" *White v. United States*, 471 F. Supp. 3d 780, 790 (W.D. Tex. 2020) (quoting *SCI Texas Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 543 (Tex. 2018)). As such, the Court recommends Plaintiff's "Count 12: Pain and Suffering, Inconvenience, Mental Anguish, and Loss of Enjoyment of Life" claim be dismissed. (*See* ECF No. 1-3 at 41).

h. Recordkeeping (Count 13)

Lastly, Defendant argues Plaintiff's "Count 13: Recordkeeping" claim be dismissed because there is no private cause of action for failure to maintain records under the FLSA. (ECF No. 42 at 31). In response, Plaintiff states, "[t]his is not in relation to recordkeeping [sic] it is in relation to retaliation. This matter is in dispute and subject to Jury Trial." (ECF No. 43 at 30).

The Court agrees with Defendant, and Plaintiff fails to provide the Court with authority establishing recordkeeping as a cause of action. *See Lobo v. Sprint Safety, Inc.*, No. 4:19-cv-3934, 2020 WL 1659888, at *2 n.14 (S.D. Tex. Mar. 30, 2020) ("It is well settled that there is no private cause of action for violations of the FLSA's recordkeeping provisions.") (collecting cases). As such, the Court recommends Plaintiff's "Count 13: Recordkeeping" claim be dismissed.

## IV.    Conclusion

Based on the foregoing, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment (ECF No. 42) be **GRANTED**.[5] The Court **FURTHER RECOMMENDS** Defendant's Motion in Limine (ECF No. 47) be **DENIED AS MOOT**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time

---

[5] In summary, the Court recommends the following claims be dismissed: wage theft (count 2); individual liability (count 5); respondeat superior (count 6); backpay (count 11); "Pain and Suffering, Inconvenience, Mental Anguish, and Loss of Enjoyment of Life" (count 12); and recordkeeping (count 13). The Court recommends summary judgment be granted as to the following claims: fraudulent inducement (count 1); sexual harassment (count 3); hostile work environment (count 4); race discrimination (counts 4 and 10); and retaliation (counts 7, 8, and 9).

period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on October 22, 2025.

Richard W. Bennett
United States Magistrate Judge